880 P.2d 139

**STATE of Arizona, Respondent,**

v.

**John Wayne ELLEVAN, Petitioner.**

**No. 1 CA-CR 93-0754-PR.**

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 23, 1994.

Charles R. Hastings, Yavapai County Atty., Prescott, for respondent.

John C. Williams, Prescott, for petitioner.

OPINION

FIDEL, Judge.

■ After serving two years of an aggravated 16.75 year prison term, petitioner learned he is HIV positive. His life expectancy is probably less than the remainder of his sentence. We hold that, even though his medical witness could only testify in terms of possibility and not of probability, petitioner met his burden of proving by preponderant evidence that he was already infected with the AIDS virus when his sentence was handed down. We reverse the trial court's contrary decision and remand for a new sentencing hearing at which the trial court shall determine whether petitioner's condition warrants a shorter prison term.

I

Petitioner pled guilty on August 7, 1989, to two counts of theft and one count each of criminal damage, unlawful flight, and possession of drug paraphernalia. His presentence report revealed a long history of intravenous drug abuse and needle sharing. In his possession at the time of arrest was a syringe he had used for injecting cocaine.

The plea agreement left sentencing to the trial court's discretion. The court found no mitigating circumstances and some aggravating circumstances and on February 2, 1990, sentenced petitioner to aggravated prison terms totalling 16.75 years.[1]

This court affirmed petitioner's conviction on appeal. *State v. Ellevan*, memorandum

---

1. For one count of possession of drug paraphernalia, petitioner received a term of 1.75 years. Consecutive to this sentence, petitioner received concurrent terms of 5 years for criminal damage and 2.5 years for unlawful flight. Consecutive to the latter sentences, petitioner received concurrent 10-year terms for two counts of theft. The duration of these consecutive sentences is 16.75 years.

decision, 1 CA–CR 89–1174 (Mar. 15, 1990). Petitioner then filed this Petition for Post–Conviction Relief on April 16, 1993, asserting that diagnosis of his HIV status constituted newly-discovered evidence that, if known at the time of sentencing, would probably have mitigated his sentence. After holding an evidentiary hearing, the trial court concluded that petitioner had not carried his burden of proving he was already HIV positive on the day of sentencing. Petitioner now seeks review.

## II

Positive HIV status is material to informed plea bargaining and sentencing because it can transform into a life sentence a term of years that would otherwise end well within the recipient's probable life span. *E.g., State v. Cooper*, 166 Ariz. 126, 130, 800 P.2d 992, 996 (App.1990) (Petitioner entitled to an evidentiary hearing to determine if he was HIV positive at time of sentencing.); *State v. Dockery*, 169 Ariz. 527, 821 P.2d 188 (App. 1991) (Abuse of discretion to not permit withdrawal from guilty plea by defendant who learned after pleading guilty, but before sentencing, that he was HIV positive.); *cf. State v. Currie*, 150 Ariz. 59, 60, 721 P.2d 1186, 1187 (App.1986) (Cancer considered as mitigating factor.).

The issue at the evidentiary hearing was whether petitioner was already HIV positive at sentencing.[2] Petitioner had the burden of proof by a preponderance of the evidence. Ariz.R.Crim.P. 32.8(c). Petitioner argues that the trial court abused its discretion in finding that he failed to meet this burden.

Two witnesses testified at the hearing—petitioner and prison doctor Dale Palmer, M.D. Petitioner testified that he was unaware that he was infected with HIV when he entered the plea agreement and did not learn of his condition until prison physicians discovered it in 1992. Petitioner added without objection that, after discovering his own condition, he learned that a former girlfriend, with whom he had shared needles and sexual relations, had AIDS. When a prison doctor told him he had probably contracted the HIV virus approximately five years earlier, petitioner identified his former girlfriend as a likely source.

The second witness, Dr. Palmer, testified that petitioner was HIV positive, that he would eventually contract AIDS, and that his condition might already have worsened into AIDS in the period that had elapsed since his last test.[3] Dr. Palmer confirmed the *possibility* that petitioner had contracted the disease from his former girlfriend in 1987, but stated he had no way of estimating with probability when petitioner had in fact contracted the virus.

Without objection, defense counsel also introduced in evidence a scientific article indicating that medical studies using different methodologies had produced "remarkably consistent estimates" of the incubation period distribution for progression from HIV infection to AIDS. According to those studies, the probability of developing AIDS is less than 2% within two years of infection, 25% to 35% within seven years of infection, and about 50% within ten years of infection. When this probability distribution was sum-

---

**2.** Rule 32.1 provides in pertinent part that one may secure post-conviction relief if:

(e) Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

(1) The newly discovered material facts were discovered after the trial.

(2) The defendant exercised due diligence in securing the newly discovered material facts.

The state conceded before the trial court that petitioner had exercised due diligence in discovering his condition. The state and defense counsel recognized that, if the trial court found petitioner was HIV positive at sentencing, there remained the issue whether that condition, if then known, would have led the court to impose a different sentence. Counsel agreed, however, the trial court could defer this question and take it up at a later sentencing hearing if petitioner met his immediate burden of proving that the condition existed at the time of sentence.

**3.** Dr. Palmer testified in August of 1993. He stated that petitioner's T-cell CB4 count had dropped from 443 in February to 312 in March to 280 in July. When the count dropped below 200 or when petitioner developed "two opportunistic viruses," he would be classified as having AIDS. Dr. Palmer could not predict how quickly a drop below 200 might occur or, indeed, whether it had already occurred since the July testing a month before.

marized for Dr. Palmer, he described it as "in the ballpark," but declined to extrapolate a probability estimate in petitioner's case. The article further indicates that intravenous drug users are at "high risk" of contracting AIDS and, as a group, had the second highest HIV incidence during the 1980s.

The state presented no evidence. Nor has it responded to the petition for review.

### III

Of two possible alternatives—that petitioner was infected with HIV before or after sentencing—the evidence introduced at hearing tended only to support the first. One month before the hearing, petitioner's T-count had declined sufficiently toward the AIDS-demarcation line that Dr. Palmer could state that it may already have dropped below the line by the time of the hearing; a scientific study received in evidence without objection showed a statistically probable incubation period of more than seven years, significantly predating sentencing; petitioner's high risk life-style before sentencing is well documented; and petitioner testified without objection that he had shared needles and engaged in sexual relations approximately two years before sentencing with a woman who later developed AIDS.

The state introduced no evidence to the contrary. The state argued that the court should consider the "many possible contacts one could have with the ... HIV virus in prison context;" but the state introduced no evidence concerning the incidence of such contacts under the current prison administration; nor did it support this argument with evidence that petitioner had engaged in such contacts during his imprisonment; nor did it introduce evidence of a statistically meaningful possibility that petitioner could have contracted a virus since imprisonment that would already have progressed to its current state. In the absence of such evidence, the state's argument, though framed as a request to take judicial notice, merely invited speculation.

■ Petitioner's burden was only to establish his claim by preponderant, not clear and convincing, evidence. In this case, petitioner met that burden unless it was somehow fatal to his position that Dr. Palmer, the one expert to testify, would only speak of medical possibilities, not probabilities.

Arizona courts have often held in other contexts that medical opinions need not be stated in terms of medical probability to be probative, even where probability must be shown. *E.g., Saide v. Stanton,* 135 Ariz. 76, 79, 659 P.2d 35, 38 (1983) (Dentist's refusal to estimate probable future dental expenses did not prevent fact-finder from assessing probable expenses based on the evidence as a whole.); *State Compensation Fund v. Industrial Comm'n,* 24 Ariz.App. 31, 37, 535 P.2d 623, 629 (1975) (In dispute over work-related cause of claimant's heart condition, because "positive knowledge [could] not be had as to causation," the administrative law judge was not obliged to give greater weight to an opinion expressed in terms of probability than to another opinion expressed in terms of possibility.); *Butler v. Wong,* 117 Ariz. 395, 573 P.2d 86 (App.1977) (Though plaintiff's doctor merely testified that the accident *could have* caused plaintiff's deafness, this testimony sufficed to permit a jury to find probable causation when coupled with evidence that plaintiff's hearing was good before the accident.). In *Butler v. Wong,* we stated, "Medical testimony, although inconclusive, may be of value when considered with the other evidence." *Id.* at 396, 573 P.2d at 87. We conclude on the basis of these authorities that Dr. Palmer's inability to express an opinion in terms of medical probability was not dispositive of petitioner's claim.

### IV

In summary, petitioner was required to prove it more probable that he acquired HIV before his sentencing than after. No evidence supported the latter finding. The only evidence before the trial court supported the former finding. Dr. Palmer, though he could not express an opinion in terms of probabilities, recognized the possibility of presentence inception and accepted petitioner's study of statistical incubation probability distributions as "in the ballpark." Although the trial court has broad discretion when it comes to weighing evidence, here the petitioner introduced

substantial evidence without objection, and the state introduced none. Under the circumstances, we find that the trial court abused its discretion in finding that petitioner had failed to meet his burden of proof.

Ordinarily, we would remand at this stage for the trial court to consider whether petitioner's condition, if known at the time of the original sentence, would probably have led the trial court to impose a different sentence. In this case, however, counsel agreed that if petitioner met his burden of proving he was HIV positive at the time of the original sentence, the trial court could proceed directly to a resentencing hearing and there take up whether a different sentence should be imposed. Accordingly, because we find that petitioner met his burden of proof, we grant relief and remand for a resentencing hearing.

JACOBSON, P.J., and NOYES, J., concur.